FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

JUL 0 6 2020   *c4o*

MITCHELL R. ELFERS
CLERK OF COURT

*11:35 am*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                                                  Crim. No. 20-1265-001 KG

LORENZO RUBEN ARIAS,

     Defendant.

<u>ORDER DENYING DEFENDANT'S DETENTION APPEAL</u>

This matter comes before the Court upon Defendant Lorenzo Ruben Arias' (Defendant) Appeal from Order of Detention (Appeal), filed April 23, 2020. (Doc. 24). The United States responded on May 7, 2020. (Doc. 27). On June 9, 2020, the Court held a video conference hearing on the Appeal. (Doc. 4). Rachel Feuerhammer and Dustin Segovia represented the United States while Gregory Garvey represented Defendant, who was present. Pretrial Services Officer Brenda Richardson was also present.

Having considered the Appeal, the response, the Criminal Complaint (Doc. 1), the Pretrial Services Report (Doc. 9), the transcript of Defendant's initial appearance before Magistrate Judge Kevin R. Sweazea (Doc. 34), the transcript of Defendant's preliminary and detention hearing before Magistrate Judge Gregory B. Wormuth (Doc. 35), Judge Wormuth's Order of Detention Pending Trial (Doc. 14), and the argument of counsel at the video conference hearing, the Court denies the Appeal and orders that Defendant remain under pretrial detention. In doing so, the Court makes the Findings of Fact and Conclusions of Law set forth below.

*I. Findings of Fact[1]*

    *A. The Criminal Complaint*

The Criminal Complaint charges Defendant with conspiracy to transport illegal aliens. *See* (Doc. 1); 8 U.S.C. §§ 1324(a)(1)(A)(v)(I) and 1324(a)(1)(A)(ii). The Complainant in the Criminal Complaint states that at about 3:15 p.m. on April 9, 2020, Border Patrol agents were informed that a group of people emerged from the desert near a New Mexico highway that runs along the border with Mexico. The Complainant further states that people boarded two vehicles, including a Chevrolet Suburban. The Complainant states that Border Patrol agents activated their lights and sirens to try to stop the vehicles, but the vehicles continued at a high rate of speed. According to the Complainant, Border Patrol agents deployed a spike strip which deflated one of the tires of the Chevrolet Suburban. The Complainant also states that the Chevrolet Suburban, nonetheless, continued to flee and then finally stopped. The Complainant states that the driver of the Chevrolet Suburban then fled on foot, but Border Patrol agents found Defendant in the passenger seat and nine undocumented aliens in the back area of the Chevrolet Suburban. Finally, the Complainant states that after being apprehended, Defendant admitted to his involvement in an alien smuggling conspiracy.

    *B. The April 13, 2020, Initial Appearance Before Judge Sweazea*

At the April 13, 2020, initial appearance, Defendant argued for his immediate release from custody, arguing that his offense was not enumerated under 18 U.S.C. § 1342(f)(1) nor did he pose a serious risk of flight under 18 U.S.C. § 1342(f)(2). (Doc. 34) at 11. The United States responded by orally moving to detain Defendant and to continue the detention hearing because

---

[1] Defendant does not contest the following factual findings.

the Court needed the Pretrial Services Report to have "enough information to determine whether or not conditions [exist] upon which the defendant[] could be released." *Id.*

Judge Sweazea noted that the Bail Reform Act establishes a presumption of release at the initial appearance unless the United States moves for detention, which the United States did in this case. *Id.* at 12. Furthermore, Judge Sweazea noted that the United States requested a continuance of the detention hearing as provided in the Bail Reform Act. *Id.* at 12-13. Judge Sweazea concluded that the facts alleged in the Criminal Complaint caused him to believe that Defendant poses a serious flight risk.[2] *Id.* at 13. Consequently, Judge Sweazea granted the United States' oral motion, and he (1) continued the detention hearing until April 16, 2020, in order to obtain more information from Pretrial Services, and (2) detained Defendant. *Id.* at 13-14.

*C. The Pretrial Services Report*

Prior to the April 16, 2020, detention hearing, Pretrial Services provided the parties and the Court with a Pretrial Services Report. The Pretrial Services Officer indicates in the report that Defendant has no verifiable employment and that no suitable third-party custodian has been identified. (Doc. 9) at 1-2. In addition, the Pretrial Services Officer indicates that Defendant has a criminal history, including four domestic violence charges and an assault charge. *Id.* at 5-6. Two of the domestic violence charges and the assault charge resulted in convictions. *Id.* Defendant also violated probation with respect to one of the domestic violence cases, resulting in a three-year jail sentence. *Id.* According to the Pretrial Services Officer, Defendant is subject

_____

[2] Although Judge Sweazea actually stated that he believed Defendant "pose[s] a flight risk," the context of the initial appearance leads the Court to conclude that Judge Sweazea inadvertently failed to state that he believed Defendant "pose[s] a *serious* flight risk." *See* (Doc. 34) at 11 (prior to Judge Sweazea making his finding, Defendant stated that Section 3142(f)(2) requires "serious risk of flight").

3

also to an active protection order and was serving a twelve-month term of probation for a 2019 assault conviction at the time of his arrest in this case. *Id.* at 6-7. The Pretrial Services Officer expected that Defendant's arrest in this case would result in a probation violation in the 2019 assault case and that an arrest warrant would issue for the probation violation.[3] *Id.* at 6. Additionally, the Pretrial Services Officer notes Defendant's substance abuse history. *Id.* at 7. Finally, the Pretrial Services Officer recommends that the Court detain Defendant because he poses a risk of nonappearance and a risk of danger to the community. *Id.* at 4.

    *D.  The April 16, 2020, Detention Hearing Before Judge Wormuth*

    At the April 16, 2020, detention hearing, the United States argued that Defendant poses "a serious risk of flight, and a danger to the community." (Doc. 35) at 6. Defendant argued that detention is not warranted under either Section 3142(f)(1) or (2). *Id.* at 5.

    Judge Wormuth found first that Defendant poses a serious risk of flight. *Id.* at 7. Judge Wormuth explained that "[t]his is a transporting case which involves international smuggling organizations, foreign nationals, and … actual flight…." *Id.* at 7-8. Judge Wormuth further found that the facts in the Pretrial Services Report "are persuasive [in] that there are no conditions under which the defendant could be released based on what is described here" as well as on the "facts of the offense, [the] substance abuse history, the history of supervision violations, [and] the violent history including domestic violence…." *Id.* at 8. Judge Wormuth decided to detain Defendant pending trial because "there's simply no conditions that would … keep the community safe or assure [Defendant's] presence." *Id.*

---

[3] In fact, at the June 9, 2020, video conference hearing, the Pretrial Services Officer stated that an active warrant was issued on April 15, 2020, for that probation violation.

*II. The Appeal*

Defendant moves the Court under 18 U.S.C. § 3145(b) to vacate Judge Wormuth's detention order and to release him from custody under the Bail Reform Act and the Fifth Amendment's due process clause. Defendant argues that Judge Sweazea erred in continuing the detention hearing and detaining him at the initial appearance, and, thus, Judge Wormuth was not authorized to hold the subsequent detention hearing and enter an order of detention. Defendant specifically argues that the United States failed to meet its burden at the initial appearance of proving that he poses a "serious" risk of flight, which is appropriate only in "extreme and unusual circumstances." Next, Defendant argues that the Bail Reform Act does not authorize detention based on being a "danger to the community."

The United States argues in its response that the standard for obtaining a detention hearing cannot be higher than the standard to detain a defendant, and that Judge Sweazea correctly concluded that Defendant poses a serious risk of flight under Section 3142(f)(2). The United States also argues that even if it had not shown that Defendant poses a serious risk of flight at the initial appearance, Defendant would not be entitled to release because a delayed finding of a serious risk of flight cannot serve as a basis for release under *United States v. Montalvo-Murillo*, 495 U.S. 711, 717 (1990). Additionally, the United States argues that Section 3142(f)(1)(D) mandated a detention hearing since Defendant was charged with a felony offense and had at two prior convictions for crimes of violence. Finally, the United States explains why Judge Wormuth's decision to detain Defendant was warranted under the Bail Reform Act.

*III. Standard of Review and Applicable Law*

"The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo." *United States v. Cisneros*, 328 F.3d 610, 616 n.1

(10th Cir. 2003). The United States may move for pretrial detention (1) if a defendant has been charged with an offense enumerated in Section 3142(f)(1), or (2) under Section 3142(f)(2), "in a case that involves ... a serious risk that such person will flee or ... a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." *United States v. Ailon-Ailon*, 875 F.3d 1334, 1336 (10th Cir. 2017) (quoting 18 U.S.C. § 3142(f)). If either of those two situations exist, the court must then hold a hearing to determine whether conditions exist "that will reasonably assure" the defendant's appearance as "required and the safety of any other person and the community." *Cisneros*, 328 F.3d at 617 (quoting 18 U.S.C. § 3142(e)).

The detention hearing must be held at the defendant's "first appearance ... unless that person, or the attorney for the government, seeks a continuance." 18 U.S.C. § 3142(f)(2). Unless good cause is shown, the United States' continuance cannot exceed three days. *Id.* "During a continuance, [the charged individual] shall be detained." 18 U.S.C. § 3142(f).

At a detention hearing, the United States bears the burden of proving "risk of flight by a preponderance of the evidence, ... and it must prove dangerousness to any other person or to the community by clear and convincing evidence." *Cisneros*, 328 F.3d at 616 (citations omitted). In deciding whether to release or detain a defendant pending trial, Section 3142(g) provides various factors for the court to consider, including "the nature and circumstances of the offense charged;" "the weight of the evidence against the person;" "the history and characteristics of the person" such as employment, past conduct, drug abuse, criminal history, and whether the person was on probation "at the time of the current offense;" and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

*IV.  Conclusions of Law*

First, the Court rejects Defendant's proposition that detaining a defendant as a serious

risk of flight at the initial appearance stage, or at any other pretrial stage, requires "extreme and

unusual circumstances." As stated above the Bail Reform Act provides that the United States

can move for pretrial detention if the case involves "a serious risk that [a defendant] will flee."

18 U.S.C. § 3142(f)(2)(A).  Defendant asserts that language from cases cited in a Judiciary

Committee Report on the Bail Reform Act "makes clear that detention based on serious risk of

flight is only appropriate under 'extreme and unusual circumstances.'" (Doc. 24) at 9.

Congress, however, opted not to use "extreme and unusual" in the Bail Reform Act to describe

the degree of the risk of flight required to hold a detention hearing.  Instead, Congress chose to

use "serious."

"When a statute does not specifically define a term, [courts] construe the term in accord

with its ordinary or natural meaning." *United States v. Gonzales*, 456 F.3d 1178, 1182 (10th Cir.

2006); *see also United States v. Burkholder*, 816 F.3d 607, 614 (10th Cir. 2016) (observing that

"[a]s with all statutory interpretation cases, we begin with the language of the statute").  In this

case, "serious" means "[s]ignificant or worrying because of possible danger or risk; not slight or

negligible."  Oxford English Dictionary, *Serious*, https://www.lexico.com/en/definition/serious

(last visited June 10, 2020).  The definition and ordinary meaning of "serious" simply do not rise

to the level of "extreme and unusual."  For the above reasons, the Court determines that the

United States must establish by a preponderance of the evidence a "serious" risk of flight, not a

risk of flight occurring under "extreme and unusual circumstances."

The next issue is whether Judge Sweazea erred at the initial appearance by finding that

Defendant poses a serious risk of flight.  Conducting a *de novo* review of Judge Sweazea's

7

finding, the Court notes that all Judge Sweazea had before him were the alleged facts in the Criminal Complaint. Those alleged facts include that Defendant was charged with conspiracy to transport undocumented aliens, Defendant was an occupant of a Chevrolet Suburban containing multiple undocumented aliens, Border Patrol agents pursued the Chevrolet Suburban at a high rate of speed, Border Patrol agents employed a spike strip which deflated one tire of the Chevrolet Suburban, the Chevrolet Suburban continued to flee but eventually stopped, the driver of the Chevrolet Suburban fled on foot, Border Patrol agents found Defendant in the front passenger seat of the Chevrolet Suburban, and Defendant admitted to his role in transporting undocumented aliens. These alleged facts reflect transnational criminal activity and actual flight from law enforcement officers. From these alleged facts, the Court concludes that the United States proved by a preponderance of the evidence at the initial appearance that Defendant poses a serious risk of flight. Hence, the Court affirms Judge Sweazea's order to continue the detention hearing and to detain Defendant.

Reviewing Judge Wormuth's detention order *de novo*, the Court notes that Judge Wormuth had before him both the Criminal Complaint and the Pretrial Services Report. Considering the alleged facts in the Criminal Complaint outlined above, and the additional information in the Pretrial Services Report, the Court again concludes that the United States proved by a preponderance of the evidence that Defendant poses a serious risk of flight.

To decide if conditions of release exist to support Defendant's pretrial release, the Court considers first the nature and circumstances of the offense charged, which, as stated above, concern transnational criminal activity and actual flight from law enforcement officers. Furthermore, the Court determines that the weight of the evidence against Defendant is strong since Border Patrol agents witnessed the events depicted in the Criminal Complaint and

Defendant admitted to his involvement in transporting undocumented aliens. The Court also notes that Defendant has no verifiable employment; no suitable third-party custodian has been identified; Defendant has a criminal history, including domestic violence and assault charges resulting in three convictions; Defendant violated probation with respect to one of the domestic violence cases; Defendant was serving a term of probation at the time of his arrest in this case; and Defendant has a history of substance abuse. Considering the above Section 3142(g) factors, the Court concludes that (1) the United States proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Defendant's appearance, and (2) the United States proved by a clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community. Accordingly, the Court affirms Judge Wormuth's order detaining Defendant.

Finally, even if Judge Sweazea erred in finding that Defendant poses a serious risk of flight, Defendant is not entitled to release. Judge Wormuth's decision to detain Defendant moots any alleged error Judge Sweazea may have committed at the initial appearance. The United States Supreme Court case, *Montalvo-Murillo*, supports this determination.

In *Montalvo-Murillo*, the district court concluded that the magistrate judge should have detained the defendant as a danger and a flight risk, but the district court released the defendant because the detention hearing did not occur at the first appearance, i.e., the detention hearing was delayed in violation of the Bail Reform Act. 495 U.S. at 713-15. The Supreme Court reversed the district court's decision to release the defendant, explaining that "there is no reason to bestow upon the defendant a windfall and to visit upon the government and the citizens a severe penalty by mandating release of possibly dangerous defendants *every time some deviation from the strictures of § 3142(f) occurs*." *Id*. at 720 (emphasis added). Applying that rationale here, Judge

9

Wormuth's subsequent correct determination that Defendant poses a serious risk of flight and should be detained nullifies or moots any prior alleged error at the initial appearance. *See id.* (noting that "[w]hen a hearing is held, a defendant subject to detention already will have suffered whatever inconvenience and uncertainty a timely hearing would have spared him. Release would not restore these benefits to him").

      IT IS ORDERED that the Appeal from Order of Detention (Doc. 24) is denied and Defendant will remain in detention pending resolution of the charges against him.

                                                     _____
                                                   UNITED STATES DISTRICT JUDGE